IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AWEKE GEBEYAW BELAY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:24-cv-2117 (RDA/IDD) |
| | ) |
| ANTONIO DONIS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on Defendants' Motion for Summary Judgment (Dkt. 5) and Plaintiff's Motion to Defer Summary Judgment (Dkt. 12). This Court has dispensed with oral argument as it would not aid in the decisional process. *See* Fed. R. Civ. P. 78(b); Local Civil Rule 7(J). These matters have been fully briefed and are now ripe for disposition. Considering the Motions together with the Oppositions (Dkts. 15, 18), and Replies (Dkts. 19, 24), the Court DENIES Plaintiff's Motion and GRANTS Defendants' Motion for the reasons that follow.

I.  BACKGROUND[1]

The Immigration and Nationality Act ("INA") permits a noncitizen seeking admission to the United States to apply for asylum. 8 U.S.C. § 1158(a)(1). To qualify, applicants must meet

---

[1] Defendants provided a background on the statutory and regulatory provisions governing the asylum process as well as some procedural information relating to this case. This information is appropriately set forth separately from Defendants statement of undisputed facts. To the extent that Defendants delve into the specific policies employed by Defendants or the number of asylum applications received, those facts would have been more appropriately set forth in Defendants' statement of undisputed facts in support of summary judgment in compliance with Federal Rule of Civil Procedure and Local Rule 56. Plaintiff, however, did not object to the organization of Defendants' brief and the information set forth is appropriately supported by admissible evidence (in the form of declarations). Plaintiff does not object to this section and does not dispute the

the definition of "refugee" by demonstrating either past persecution or a well-founded fear of future persecution on account of protected grounds listed in the statute. *See* 8 U.S.C. §§ 1101(a)(42)(A), 1158(b)(1)(B)(i); *see also* Dkt. 6-1, Exh. 1, Declaration of John L. Lafferty ¶ 5 ("Lafferty Decl."). Applicants must also establish that they warrant a favorable exercise of discretion, as Congress has expressly afforded the Secretary of Homeland Security (the "Secretary") or the Attorney General discretion by providing that: "The [Secretary] or Attorney General *may* grant asylum . . . ." 8 U.S.C. § 1158(b)(1)(A) (emphasis added).

A noncitizen seeking asylum generally must apply within one year of being admitted to or paroled within the United States. 8 U.S.C. § 1158(a)(2)(B); *see also* Dkt. 6-1, Exh. 2, Declaration of Antonio Donis ¶ 21 ("Donis Decl."). An application may be filed affirmatively with the U.S. Citizenship and Immigration Services ("USCIS") or as a defensive measure during removal proceedings in immigration court. 8 C.F.R. § 208.2 (regulations concerning affirmative asylum applications); *id.* § 1208.2 (defensive applications). The USCIS' Refugee, Asylum, and International Operations Directorate (hereinafter, the "Asylum Division") processes affirmative asylum applications. 8 C.F.R. § 208.2(a). Generally, the INA directs the Asylum Division, absent extraordinary circumstances, to conduct the initial interview or hearing within forty-five (45) days after a noncitizen files the application and to adjudicate the application within one hundred eighty (180) days of the filing. 8 U.S.C. § 1158(d)(5)(A)(ii), (iii). Asylum applicants may obtain employment and apply for advance parole to travel outside of the United States while their

---

factual accuracy of the information contained therein. Although Plaintiff does seek an opportunity for discovery, that motion will be denied for the reasons stated *infra*. Accordingly, the Court considers the information set forth in Defendants "background" sections as it provides necessary context as well as necessary factual information for disposing of the motions for summary judgment.

applications are pending. 8 U.S.C. §§ 1182, 1158(d)(2), 1324a; 8 C.F.R. §§ 208.7(a)(1), 212.5(f), 274a.12.

Asylum officers conduct the initial interview on affirmative asylum applications. 8 C.F.R. § 208.1(b). If an applicant is statutorily eligible for asylum and warrants a favorable exercise of discretion, the asylum officer grants asylum to the applicant. 8 C.F.R. § 208.14(b). If the asylum officer determines either that the applicant is not statutorily eligible or does not warrant a favorable exercise of discretion, the officer will not grant the asylum application. If the applicant lacks legal status in the United States and the application is denied, the asylum officer refers the applicant to immigration court. *Id.* § 208.14(c)(1). A referral to immigration court is not a final decision in the case and is not considered a denial of the asylum application. *Id.* § 208.4(a)(3). The immigration court will then have exclusive jurisdiction to make a final decision on the asylum application. *Id.* § 208.2(b). If an asylum application is denied by an immigration judge ("IJ"), the applicant may still seek withholding of removal or deferral of removal pursuant to the Convention Against Torture. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. §§ 1208.16, 1208.17.

In addition to adjudicating asylum applications, the Asylum Division is also responsible for other mandatory workloads. This includes conducting credible fear and reasonable fear screenings pursuant to 8 U.S.C. § 1225(b)(2)(B), 8 C.F.R. § 208.30, and 8 C.F.R. § 208.31. Dkt. 6-1, Exh. 1 ¶ 2; *id.* Exh. 2 ¶ 4. In accordance with a Department of Homeland Security ("DHS") measure established under the Government Performance and Results Act, USCIS endeavors to complete credible fear screenings in an average of fourteen (14) days from receipt of referral. Ex. 1 ¶ 16; *see* Annual Performance Report for Fiscal Year ("FY") 2023–2025, DHS, at 105 (Mar. 5, 2024).

Additionally, the Asylum Division conducts screening determinations regarding whether certain noncitizens are subject to the rebuttable presumption of ineligibility for asylum created by the Circumvention of Lawful Pathway Rule, 88 Fed. Reg. 31, 314 (May 16, 2023) and whether noncitizens subject to this presumption are able to establish limited exceptions or rebut the presumption by demonstrating exceptionally compelling circumstances described in 8 C.F.R. §§ 208.33(a), 1208.33(a). Dkt. 6-1, Exh. 1 ¶ 2; *id.* Exh. 2 ¶ 4. The Asylum Division also conducts threshold screening assessments at U.S.-Canada land border ports of entry to determine whether certain individuals are ineligible to apply for asylum pursuant to 8 U.S.C. § 1158(a)(2)(A). *Id.* The Asylum Division also adjudicates applications for relief under section 203 of the Nicaraguan Adjustment and Central American Relief Act and conducts asylum merits interviews and adjudicates applications for asylum pursuant to 87 Fed. Reg. 18,078 (May 31, 2022) ("Asylum Processing Rule"). *Id.*

In processing applications, the Asylum Division prioritizes claims that, unlike affirmative asylum adjudications, have a mandatory deadline under the regulations and affect detained noncitizens. *See* Dkt. 6-1, Exh. 1 ¶¶ 14–16, 49, 51–52; *id.* Exh. 2 ¶¶ 4–6, 9–12, 30. Further, Congress has directed that the Asylum Division prioritize asylum applications filed by certain Afghan parolees under Operation Allies Welcome ("OAW"), as described in section 2502(a) of Public Law 117-43, The Extending Government Funding and Delivering Emergency Assistance Act (Sept. 30, 2021). *See* Dkt. 6-1, Exh. 1 ¶ 49; *id.* Exh. 2 ¶¶ 9–12. A settlement agreement entered into by the Government in *Ahmed v. DHS*, 4:23-cv-01892-JST (N.D. Cal.), also created requirements that the Asylum Division must meet. Namely, it established benchmarks for the Asylum Division to become current with respect to OAW adjudications. Dkt. 6-1, Exh. 1 ¶ 51. Specifically, the settlement agreement requires USCIS complete 90% of all OAW asylum

applications filed on or after February 1, 2024, within the 150 days required by the Extending Government Funding Act in 2021. *Id.* ¶ 52. The Arlington Asylum Office, where Plaintiff's application is pending, has the largest share of pending OAW applications. *Id.*, Exh. 2 ¶ 10.

To address a backlog of asylum cases, in 2018, USCIS announced began utilizing a "Last-In, First-Out" ("LIFO") scheduling method. Dkt. 6-1, Exh. 1 ¶¶ 20, 21–23. Pursuant to this method, applicants who were scheduled for an interview, but needed to be rescheduled at the applicant's or USCIS' request, are prioritized first; applications pending twenty-one days or less since filing are prioritized second; and all other pending applications, starting with newer filings and working back towards older filings, are prioritized third. *Id.* ¶ 24. Additionally, Asylum Office Directors may exercise discretion to adjudicate urgent cases ahead of others where exigent circumstances support expediting adjudication of a particular application. *Id.* ¶ 32.

Workload priorities related to border enforcement, statutory requirements, and litigation obligations also continue to affect USCIS' ability to schedule all new affirmative asylum applications for an interview within 21 days of filing. *Id.* ¶¶ 27, 48-52. Accordingly, USCIS now schedules affirmative asylum interviews along two tracks simultaneously. *Id.* ¶ 31. Track one includes those prioritized applicants explained in the LIFO scheduling method, and track two includes the affirmative asylum cases that are pending in the backlog, starting with the oldest cases and working forward. *Id.* ¶ 32. USCIS is therefore assigning some of its limited asylum officer corps to complete affirmative asylum cases pending in the backlog, starting with the oldest cases and working forward toward newer filings, in addition to scheduling asylum interviews according to the LIFO method. *Id.* ¶ 30; *see also id.*, Exh. 2 ¶ 22. Additionally, asylum officers from the Arlington Asylum Office travel to other offices to conduct interviews on an ad hoc basis. *Id.*, Exh. 2 ¶ 14. In 2024, USCIS adjudicated more than 126,000 affirmative asylum cases. *See id.* Exh. 1,

Chart 2; *see also* Dkt. 6-1, Exh. 3, Data from the Asylum Division Monthly Statistics Report, FY 2024, Sept. 2024, at 3 (Oct. 29, 2024).

The Arlington Asylum Office currently has over 155,000 pending affirmative asylum applications that are awaiting initial eligibility interviews and final case determinations. *See* Dkt. 6-1, Exh. 4, Data from the Asylum Division Monthly Statistics Report, FY 2025, Nov. 2024, at 1 (Dec. 19, 2024). In general, it takes approximately four hours to adjudicate an affirmative asylum application, but more complicated cases can take eight hours. *See* Dkt. 6-1, Exh. 2 ¶ 19. At the end of FY 2024 Quarter 2, the affirmative backlog totaled 1,161,686 applications, driven in large part by the substantial increase in affirmative asylum applications in FY 2022 and FY 2023. *See* Dkt. 6-1, Exh. 1 ¶ 33. The affirmative backlog at the end of FY 2024 totaled 1,343,933 applications. *Id.*, Exh. 3. Despite the increase in affirmative asylum applications, the Asylum Division's backlog of cases increased just 1% from FY 2023 to FY 2024. *See id.* Exh. 1, Chart 1.

USCIS is also taking steps to resolve cancellation cases in order to reduce backlog. "Cancellation cases" are affirmative asylum cases filed by noncitizens that are late, meritless, and/or solely for the purpose of USCIS placing them in removal proceedings before EOIR, where a noncitizen may apply for cancellation of removal. *Id.* ¶ 53. To curb these cancellation cases, USCIS offers applicants that may qualify as a cancellation case to waive their asylum interview and be referred to EOIR. *Id.* ¶ 55. In the past 5 fiscal years, approximately 20% of applicants who received the opportunity to waive their interview accepted the offer. *Id.* The Asylum Division is also utilizing technology to streamline application processing. *Id.* ¶ 56.

Plaintiff filed this lawsuit on November 25, 2024. Dkt. 1. Plaintiff seeks an order from this Court compelling USCIS to adjudicate his Form I-589, Application for Asylum and for Withholding of Removal. *Id.* ¶ 33. Plaintiff premises his request for relief on the Administrative

6

Procedure Act (the "APA") and the Mandamus Act. On January 27, 2025, Defendants filed their Motion for Summary Judgment (the "MSJ"). Dkt. 5. After receiving extensions of time to respond to the MSJ, Dkts. 9, 11, Plaintiff filed his Opposition and Motion to Defer Summary Judgment, Dkts. 12, 13, 15.[2] On March 11, 2025, Defendants filed their Reply in Support of the MSJ and Opposition to the Motion to Defer. Dkts. 18, 19. Finally, on March 27, 2024, Plaintiff filed his Reply in Support of the Motion to Defer. Dkt. 24.[3]

## II.   UNDISPUTED FACTS

Consistent with Rule 56 and Local Rule 56, Defendants set forth their asserted undisputed facts and Plaintiff responded. Accordingly, the Court draws the below set of undisputed facts from the MSJ and Opposition thereto.

1. On October 23, 2022, Plaintiff filed his Form I-589, Application for Asylum and for Withholding of Removal.

2. On November 16, 2022, Plaintiff completed his required biometrics appointment.

3. Plaintiff's Form I-765 was approved on April 21, 2023, with his "Employment Authorization Document" or "EAD" set to expire on April 30, 2025.

4. On January 11, 2025, Plaintiff's application to renew his EAD was approved and his current EAD is valid until January 9, 2030.

5. Defendants assert that applying their current scheduling system, it is not yet Plaintiff's turn to be scheduled for an interview based on his Form I-589 filing date.[4]

---

[2] Docket entries 13 and 15 are identical.

[3] Where page numbers are used for each of these docket entries, they refer to the ECF ascribed page numbers and not the page numbers on bottom of the documents.

[4] Plaintiff's only objection to this asserted fact is that Defendants have not produced admissible evidence that it is not his turn to be scheduled for an interview based on the scheduling

6. On November 12, 2024, Plaintiff requested expedited adjudication of his asylum application and, on November 19, 2024, that request was denied.

7. As of the filing of the Complaint, Plaintiff has not been scheduled for an asylum interview.

### III. LEGAL STANDARD

Summary judgment is appropriate only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. "(A) party

---

method employed by USCIS. Dkt. 13 at 5-6. But Defendants rely on the Lafferty and Donis Declarations to support their asserted facts (Dkt. 6-1 Exhs. 1, 2) and, at the summary judgment stage, a party may rely on affidavits and declarations where they "would be admissible in evidence at trial." *Burwick v. Pilkerton*, 700 F. App'x 214, 216 (4th Cir. 2017). Here, both declarants aver that their declarations are based on "[their] personal knowledge and [their] review of official documents and records maintained by USCIS." Dkt. 6-1, Exh. 1 ¶ 1; *id.* Exh. 2 ¶ 1. It thus appears that the declarants' knowledge is based on their personal knowledge and their review of business records of USCIS. Courts have generally accepted such declarations as admissible on summary judgment, and Plaintiff points to no contrary case authority. *See, e.g.*, *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 693 (E.D. Va. Jan. 28, 2020) (recognizing that evidence considered on summary judgment "may consist of the witness's own testimony" or "may be based on review of files, if the testimony states facts reflected by the files"); *Mundo-Violante v. Kerry*, 180 F. Supp. 3d 442, 448–49 (W.D. Va. 2016) (holding USCIS declarations to be admissible evidence); *Howard v. GE Money*, 2014 WL 6810764, at *4 (M.D.N.C. Dec. 2, 2014) (finding declarations admissible where they were based on first-hand knowledge and/or review of defendants' records); *Hasnat v. Rubio*, 2025 WL 675221, at *4 (D. Md. Mar. 3, 2025) (granting summary judgment for asylum application delayed less than three years based on "a sworn declaration from John Lafferty, the Chief of the Asylum Division"); *Ahmed v. Bitter*, 727 F. Supp. 3d 630, 638 (S.D. Tex. 2024) (granting summary judgment in visa delay case where defendant supplied three agency declarations to outline the agency's rule of reason); *Su v. Mayorkas*, 698 F. Supp. 3d 1168, 1177 (N.D. Cal. Oct. 17, 2023) (same for asylum delay of three years). In the body of Plaintiff's Brief (and inappropriately divorced from the discussion of any specific asserted undisputed fact), Plaintiff argues that the declarations are hearsay. Not so. As discussed, the declarations are based on personal knowledge and a review of business records. In any event, this asserted fact does not appear to be material to the issues presented on summary judgment.

opposing summary judgment may not simply rest on the allegations of his complaint but must instead come forward with specific evidence showing the existence of a genuine issue of fact." *Muhammad v. Giant Food*, 108 F. App'x 757, 764 (4th Cir. 2004) (citing *Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991)).

With respect to the Motion to Defer, as a District Judge in this District recently explained, Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be [postponed] when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Gebremedhin v. Gentry*, 2025 WL 1139115, at *1 (E.D. Va. Apr. 17, 2025) (citing *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014)). The non-movant must put the Court on notice as to which specific facts have yet to be discovered, and vague requests that discovery is needed are insufficient to satisfy Rule 56(d)'s requirements. *See McCray v. Maryland Dep't of Transp., Maryland Transit Admin.*, 741 F.3d 480, 484 (4th Cir. 2014). A district court may deny a Rule 56(d) motion "when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." *Pisano*, 743 F.3d at 931.

Furthermore, in an APA action seeking agency action, the Court's role is limited to review of the administrative record. *See Camp v. Pitts*, 411 U.S. 138, 142 (1973); *LivinRite, Inc. v. Azar*, 386 F. Supp. 3d 644, 650 (E.D. Va. 2019). Thus, "the entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001). More particularly, in cases brought under 5 U.S.C. § 706(1) of the APA there "is no 'administrative record' for a federal court to review." *Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012) (quoting *Friends of the Clearwater v. Dombeck*, 222 F.3d

552, 560 (9th Cir. 2000)); *see Telecomms. Resch. & Action Ctr. v. FCC*, 750 F.2d 70, 70 (D.C. Cir. 1984) ("*TRAC*").[5]

## IV.   ANALYSIS

Here, before reaching the merits of the MSJ, the Court must first address the Motion to Defer. Because the Motion to Defer will be denied, the Court next considers the MSJ and determines that Defendants are entitled to judgment as a matter of law.

### A.   Motion to Defer

Here, Plaintiff seeks to delay resolution of the MSJ to take discovery regarding the "the backlog reduction effort policy . . . to determine how the agency actually schedules backlogged asylum interviews, including whether the agency uses a strict reverse chronological system or whether any exceptions exist; whether there is a discernable line at all; whether the FIFO scheduling is resulting in any meaningful number of interviews; the pace at which the agency selects cases from the backlog; and whether Plaintiff can reasonably expect her[6] asylum interview scheduled before the end of her natural life on earth absent this Court's intervention." Dkt. 13 at 8 (citing Dkt. 13-3). The Declaration of Simon Y. Sandoval-Moshenberg in support of the Motion to Defer reiterates the same basic categories of discovery sought. Dkt. 13-4 (the "Sandoval-Moshenberg Decl.").

Here, the Sandoval-Moshenberg Declaration fails to perform the second step required to satisfy Rule 56(d). That is, the declaration fails to "specifically allege why the information sought

---

[5] Plaintiff here concedes that his claim is brought pursuant to Section 706(1). *See* Dkt. 13 at 17 (arguing that this is an "agency action unlawfully withheld" case and citing 5 U.S.C. § 706(a)).

[6] Although the quoted portions of Plaintiff's brief use "she" and "her" pronouns, Plaintiff appears to be male and is otherwise referred to as "he" and "him."

would have been sufficient to create a genuine issue of material fact." *Strag v. Bd. of Trs.*, 55 F.3d 943, 954 (4th Cir. 1995). Moreover, the Fourth Circuit has held that "[a] [Rule 56(d)] affidavit that conclusorily states that discovery is required is insufficient; the affidavit must specify the reasons the party is unable to present the necessary facts and describe with particularity the evidence that the party seeks to obtain." *Radi v. Sebelius*, 434 F. App'x 177, 178 (4th Cir. 2011). Plaintiff does not connect any of the information sought to the specific undisputed facts asserted by Defendants as sufficient to award summary judgment in their favor; nor does Plaintiff explain how any of the information sought would create a triable issue of fact. *See Hodgin v. UTC Fire & Security Americas Corp., Inc.*, 885 F.3d 243, 250 (4th Cir. 2018) (dismissing a Rule 56(d) motion because plaintiffs' requests "do not . . . explain how that evidence would create a triable issue"). In short, Plaintiff's declaration fails to specifically connect the requested discovery to the MSJ and therefore fails pursuant to satisfy Rule 56(d). Accordingly, the Motion to Defer will be denied.

Further supporting the Court's conclusion in this regard is that Plaintiff's counsel sought the same information in a different asylum case before Senior U.S. District Judge Claude M. Hilton. *See Gebremedhin*, 2025 WL 1139115. Judge Hilton, analyzing a similar Rule 56(d) Motion by Plaintiff's counsel, denied the Rule 56(d) motion in that case. Judge Hilton also noted in that case that the Rule 56(d) motion should be denied because "Plaintiff has not shown *how* or *why* the requested information would be 'sufficient to create a genuine issue of material fact such that it would have defeated summary judgment.'" *Id.* at *2. Other courts have also rejected Rule 56(d) motions made in similar circumstances. *See also Gebeyehu v. Jaddou*, 2024 WL 1973215, at *4 (W.D. Wash. May 3, 2024) (holding that "Plaintiff has failed to demonstrate that Rule 56(d) relief is warranted because the facts he seeks" regarding asylum "are not essential to oppose Defendants' Motion for Summary Judgment"); *Ahmed v. U.S. Dep't of State*, 2024 WL 315705,

11

at *6 (N.D. Cal. Jan. 26, 2024) (holding that the plaintiff had not met his burden "to proffer sufficient facts to show that the evidence sought exists, and that it would prevent summary judgment"). Thus, this confirms that the Motion to Defer should, and will, be denied.[7]

B.   MSJ

Defendants argue that they are entitled to judgment as of matter of law on Plaintiff's claims under the APA and Mandamus Act because USCIS has not "unreasonably delayed" the adjudication of Plaintiff's asylum application. Dkt. 6 at 16. Plaintiff puts forth two arguments under the APA and the Mandamus Act asking the Court to compel Defendants to adjudicate Plaintiff's application. First, Plaintiff argues that Defendants are unlawfully withholding agency action. Second, Plaintiff argues that that adjudication of the application is unreasonably delayed. Both arguments fail, and Defendants are entitled to judgment as a matter of law.[8]

i.   Adjudication of Plaintiff's Asylum Application Was Not Unlawfully Withheld

The Court first analyzes the "unlawfully withheld" argument. In that regard, Plaintiff claims that—given the number of cases pending and the rate of asylum interviews—it "could be well over 500 years before Defendants reach Plaintiff's case and select it for interview." Dkt. 13

---

[7] Plaintiff notes that Defendants agreed to provide the discovery requested here in another case. *See Negash v. Donis*, No. 1:24-cv-1748 (E.D. Va.) (Giles, J.). To begin with, the Court cannot discern the accuracy of Plaintiff's allegations regarding what Defendants did or did not agree to provide in that case. But, in any event, Plaintiff ignores that, in that case, the motion to defer summary judgment pursuant to Rule 56 *was denied*. *See id.*, Dkt. 24, Order dated February 14, 2025 ("For the reasons stated from the bench, Plaintiff's Motion to Defer Summary Judgment Pursuant to Fed. R. Civ. P. 56(d) is denied.").

[8] As an initial matter, the standard for obtaining relief under the APA and Mandamus Act are functionally identical and will be considered together. *See Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 63-64 (2004); *see also Gebremedhin,* 2025 WL 1139115, at *2.

at 16.[9]  Both parties agree that "a claim challenging an 'unreasonably delayed' agency action is sufficiently distinct from a claim contesting 'unlawfully withheld' agency action." *South Carolina v. United States*, 907 F.3d 742, 759 (4th Cir. 2018) (quoting 5 U.S.C. § 706(1)).  As the Fourth Circuit has recognized, actions are "unlawfully withheld" only where "Congress by organic statute sets a specific deadline for agency action" such that "[t]he agency *must* act by the deadline." *Id.* at 758 (citing *Forest Guardians v. Babbitt*, 174 F.3d 1178, 1190 (10th Cir. 1999)).  Accordingly, where an "applicable statute contain[s] 'no deadlines,'" a district court property analyzes "the agency's inaction as being 'unreasonably delayed' rather than 'unlawfully withheld.'" *Id.*  But, where there is a "failure to meet a hard statutory deadline," the agency action should be analyzed to determine whether it was "unlawfully withheld." *Id.* at 760.

Here, Congress declined to apply a "hard statutory deadline"; rather, Congress provided that adjudication shall occur within a timeframe provided "in the absence of exceptional circumstances."  8 U.S.C. § 1158(d)(5).  Here, the "exceptional circumstances" language means that there is no mandatory deadline and that Congress has provided Defendants with leeway to move beyond 45 days or 180 days where necessary.  A determination regarding whether such "exceptional circumstances" are present essentially requires a determination of reasonableness and, pursuant to the Fourth Circuit's holding in *South Carolina*, means that Plaintiff's claim is more appropriately considered an "unreasonable delay" claim.  Other district judges, within this District and elsewhere, have reached the same conclusion. *See, e.g.*, *Gebremedhin*, 2025 WL

---

[9] As an initial matter, Plaintiff did not make an unlawfully withheld claim in his Complaint. Rather, Plaintiff's Complaint focused on his unreasonable delay claim.  And "it is well-established that parties cannot amend their complaints through briefing." *S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013).  Accordingly, Plaintiff cannot make an unlawfully withheld claim now.  Nonetheless, the Court will address this argument.

13

1139115, at *2 (holding that "there is no mandatory deadline" and holding that the plaintiff's "application is not being unlawfully withheld"); *Topuz v. Daum*, 2024 WL 4282091, at *5 (S.D. Tex. Sep. 24, 2024) ("Being that there is no 'statutorily-imposed absolute deadline' that Plaintiff can ask this Court to enforce, Plaintiff is precluded from his 'unlawfully withheld' argument as a matter of law."). Thus, to the extent that Plaintiff's unlawfully withheld claim is raised by his Complaint at all, Defendants are entitled to judgment as a matter of law.

    ii.    Adjudication of Plaintiff's Asylum Application Was Not Unreasonably Delayed

Turning next to Plaintiff's unreasonable delay claim, that claim also fails such that Defendants are entitled to judgment as a matter of law. With respect to this claim, the parties agree that "most courts have followed the D.C. Circuit's decision in *Telecomms. Rsch. & Action Ctr. (TRAC) v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984)." Dkt. 13 at 18 (quoting *Gonzalez v. Cuccinelli*, 985 F.3d 357, 375 (4th Cir. 2021)). The six *TRAC* factors include consideration of: (i) the time agencies take to make decisions must be governed by a rule of reason; (ii) the statutory scheme may supply content for this rule of reason; (iii) delays are less tolerable where human health and welfare are at stake; (iv) the effect of expediting delayed action on agency activities of a higher or competing priority; (v) the nature and extent of the interests prejudiced by delay; and (vi) any impropriety, but such impropriety is not necessary to find unreasonable delay. *TRAC*, 750 F.2d at 80. No single factor is dispositive, but the first and fourth factors often carry the greatest weight. *See In re Core Communications, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008). In addition, the agency's responsiveness, or lack thereof, "must be judged in . . . light of the resources that Congress has supplied to the agency for the exercise of its function." *Wright v. Califano*, 587 F.2d 345, 353 (7th Cir. 1978) (holding that plaintiff's delayed decision was reasonable because the Social Security Administration's volume of applications increased, and the agency had finite

14

resources to address the increased volume). Because Plaintiff cannot establish that Defendants' delay is unreasonable under *TRAC*, the MSJ will be granted.

With respect to the first and second *TRAC* factors, Defendants acknowledge that "there is a delay in adjudicating asylum applications" and assert that the delay was caused by an unprecedented volume of asylum applications." Dkt. 6 at 17 (citing Dkt. 6-1, Exh. 1, Chart 2 and Exh. 3 at 2). Both parties appear to agree that USCIS uses a combination of the LIFO and backlog reduction efforts to address asylum applications, but dispute whether such practice constitutes a rule of reason. Dkt. 6 at 17; Dkt. 13 at 18-19. A review of the Lafferty and Donis Declarations, as well as the information attached thereto, demonstrates that USCIS is under tremendous strain to adjudicate the pending asylum applications and address the backlog, while simultaneously receiving new applications and addressing other statutory obligations. Dkt. 6-1, Exhs. 1 and 2. As the Lafferty Declaration sets forth, the LIFO system has been more effective than other systems because it simultaneously addresses the backlog, addresses new applications, and discourages frivolous filings. *See* Dkt. 6-1 ¶¶ 21, 25 (indicating that a "First-In, First-Out" or "FIFO" system "unfortunately had negative consequences" because it "led to a substantial increase in non-meritorious asylum applications" and that "[r]eceipts immediately fell upon the return to LIFO scheduling"). Thus, the admissible information[10] provided by Defendants establishes that the combination LIFO/backlog reduction system provides a rule of reason informed by the statutory scheme. Accordingly, the first and second *TRAC* factors weigh in Defendants' favor.

This Court's conclusion that the LIFO/backlog reduction system provides a rule of reason is supported by the decisions of other courts, within and outside of this Circuit, who have reached the same conclusion. *See, e.g.*, *Gebremedhin*, 2025 WL 1139115, at *3 ("USCIS employs a rule

---

[10] The Court addressed Plaintiff's admissibility argument *supra*.

15

of reason"); *Hasnat v. Rubio*, 2025 WL 675221, at *4 (D. Md. Mar. 3, 2025) (treating motion as one for summary judgment and finding LIFO is a rule of reason); *Zheng v. Mayorkas*, 2024 WL 130157, at *6 (N.D. Cal. Jan. 11, 2024) (finding LIFO a rule of reason and noting that "courts in this Circuit have consistently found that LIFO is a rule of reason"). Courts have even determined that the LIFO/backlog reduction system is a rule of reason at the motion-to-dismiss stage. *See, e.g.*, *Zhang v. Wolf*, 2020 WL 5878255 (E.D.N.Y. Sept. 30, 2020) ("These precedents, and the record of which the court takes judicial notice, support a finding that the adjudication of asylum applications pursuant to LIFO is governed by a 'rule of reason.'"); *Teymouri v. USCIS*, 2022 WL 18717560, at *4 (C.D. Cal. Jan. 31, 2022) ("In considering the first and second factors, courts consistently find that the last-in-first-out scheduling system ('LIFO') is a rule of reason."); *Arabzada v. Donis*, 725 F. Supp. 3d 1, 14-15 (D.D.C. 2024) (listing cases in various circuits also ruling that LIFO constitutes a rule of reason). Against this weight of authority, Plaintiff cites two cases: (i) the first is a decision where, on a more complete motion pursuant to Rule 56(d), the court permitted discovery before ruling on summary judgment[11]; and (ii) the second is a decision where the district judge invited a Rule 56(d) motion.[12] Dkt. 13 at 19. Neither decision is persuasive here. Plaintiff further argues that the policy cannot constitute a rule of reason where he has no firm timeline of when his application will be addressed. But this argument is unsupported and fails to recognize the complexity of the task faced by Defendants. *See Hasnat*, 2025 WL 675221, at *4 (recognizing that courts must consider "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency"). As courts recognize,

---

[11] *Munoz-Barba v. Mayorkas*, 2024 WL 2818850 (N.D. Cal. June 3, 2024) (granting Rule 56(d) motion, where there were specific discovery requests).

[12] *Edakunni v. Mayorkas*, No. C-21-0393, Order dated July 5, 2022 (W.D. Wash.).

LIFO "is an imperfect system that places some applicants ahead of others in line, but USCIS offers a valid reason for its use, and it provides 'an orderly chronological approach.'" *Id.* (quoting *Arabzada*, 725 F. Supp. 3d at 15).

Factors three and five are often considered together. In this regard, Plaintiff cites to his 146-page request for an expedited interview. Dkt. 13-1. Although it is not clear from Plaintiff's brief on which portion of this lengthy document Plaintiff relies, the Court notes that the document contains an affidavit from Plaintiff regarding the impact that this delay has had on him. *Id.* at 23-24. Plaintiff asserts that he is anxious about his own situation and his family's situation in Ethiopia and that such fears make daily living difficult. *Id.* Although the Court does not doubt the sincerity of Plaintiff's fears, they do not appear based on any specific examples of concrete harms to himself or his family. *Id.* Moreover, although Plaintiff's anxieties are understandable, Plaintiff's descriptions of his fears based on lack of stable employment appear not to be well-founded where the parties agree that Plaintiff has an EAD through 2030. *See* Dkt. 6-1, Exh. 2 ¶ 26 ("Plaintiff's current EAD is valid until January 9, 2030."). But even taking Plaintiff's anxieties at face value, courts have recognized that "uncertainty and the inability to move forward with the normal course of life are inherent risks of engaging in the immigration process." *Tikhonov v. Mayorkas*, 2024 WL 4692146, at *6 (S.D. Fla. Nov. 6, 2024); *Liuqing Zhu v. Cissna*, 2019 WL 3064458, at *4 (C.D. Cal. Apr. 22, 2019) (finding that "such a risk is inherent in the process of seeking asylum" and does not weigh in plaintiff's favor); *Lajin v. Radel*, 2019 WL 3388363, at *3-4 (S.D. Cal. July 26, 2019) (rejecting consideration of plaintiff's "anxiety, worry, [and] psychological depression" where plaintiff "is permitted to live in the United States without fear of being removed to his home country . . . and can apply for employment authorization").

Plaintiff also receives several benefits from his status that aid his health and welfare. *See* 8 U.S.C. §§ 1158(d)(2), 1324a (work authorization); 8 U.S.C. § 1182(d)(5) (advance parole). Courts recognize that these benefits support that the third and fifth *TRAC* factors weigh in favor of Defendants. *See Lajin*, 2019 WL 3388363, at *4 (finding that third and fifth factors weigh in favor of Defendants where "Plaintiff is able to live his life during the delay without the additional concern of removal or inability to work"); *Gebremedhin,* 2025 WL 1139115, at *4 ("Third, there is no increased risk to human health and welfare. Plaintiff is residing in the United States while her application is pending."). Moreover, Plaintiff's asserted difficulties are no different than those "likewise faced by all asylum applications in similar positions." *Su v. Mayorkas*, 698 F. Supp. 3d 1168, 1178 (N.D. Cal. 2023) (quoting *Yan v. Dir. of L.A. Asylum Office*, 2023 WL 4053410, at *5 (C.D. Cal. June 16, 2023)). Thus, "Plaintiff must understand that his present request simply asks the Court to value his stress over that of thousands of other asylum applicants who are currently experiencing the same stress." *Yilmaz v. Jaddou*, 697 F. Supp. 3d 951, 962 (C.D. Cal. Oct. 4, 2023). Accordingly, the third and fifth factors also weigh in favor of Defendants.

With respect to the fourth *TRAC* factor, the Court agrees that expediting Plaintiff's application will prejudice Defendants and other applicants. As the Fourth Circuit has indicated, "courts should be loath to second guess" how USCIS balances "the need for adequate protections for asylum seekers against a backlog of cases." *Blanco de Belbruno v. Ashcroft*, 362 F.3d 272, 280 (4th Cir. 2004). Further, this Court agrees with Judge Hilton's analysis that "[i]nevitably there are only so many interview spots" and that, "[i]f one applicant is expedited, there is one less spot for the applicants who have been waiting longer." *Gebremedhin,* 2025 WL 1139115, at *4. Other courts have also recognized the prejudice that such reordering of priorities would have on other applicants. *See, e.g.*, *Liu v. USCIS*, 2024 WL 4436232, at *3 (E.D.N.Y. Oct. 7, 2024) ("Ordering

18

the agency to place plaintiff 'at the head of the queue' while 'mov[ing] all others back one space,' could thus delay the adjudication of longer-pending applications that present comparable interests."). Indeed, granting Plaintiff's relief here would cause further havoc in the asylum processing system, because every asylum applicant would be incentivized to file suit after 180 days had passed and USCIS could have to juggle competing court orders directing USCIS to prioritize different individual applications. Thus, Plaintiff's argument that granting *his* relief would cause an "infinitesimally small" impact on other applications ignores the reality of the situation, because it is a slippery slope that would surely lead to other applications and impose a burden on USCIS to determine whom they have been directed to take out of turn and how to prioritize those applications.[13] Accordingly, this factor also favors Defendants.[14]

Thus, five of the six *TRAC* factors favor Defendants. With respect to the final *TRAC* factor, it merely holds that a court need not find impropriety in order to find a delay unreasonable.

---

[13] For example, suppose 300 asylum applicants being handled at the Arlington Asylum Office each file suit and obtain a court order directing that they be given an interview within 30 days, as Plaintiff requests here. The Arlington Asylum Office would have to draw resources from other areas to handle those requests and would have to determine within that group how to prioritize those 300 applicants because they may be unable to address all 300 within the 30-day timeframe. Such an influx of court-ordered priorities could contribute to months-long delays for persons who did not file suit and who had been waiting as long, if not longer.

[14] Plaintiff argues that the fact that Plaintiff has not been given a specific numbered spot for his position in the queue means that there is no orderly review of applications. Dkt. 13 at 28 (arguing "USCIS should have been able to tell this Court where Plaintiff's case lies in the queue and estimate when he can expect an interview"). This is unpersuasive, and the Court does not extrapolate the conclusion that no line exists from the fact that no exact position in line was given to Plaintiff. Rather, the line that exists is subject to a number of factors that adjust Plaintiff's position within the line as set forth in the Lafferty and Donis Declarations. For example, the fact that Defendants have a FIFO policy necessarily means that Plaintiff's position in line fluctuates given the number of new applications received. Moreover, staffing changes and other decisions – like the *Ahmed* settlement decree – can adjust Plaintiff's position in line. Thus, it would not be fruitful to try to identify a specific numerical position in line, because that position would be subject to change; such change does not mean that a line does not exist.

19

Plaintiff concedes that this factor is neutral. Dkt. 13 at 30 ("The sixth factor is accordingly neutral."). Because the *TRAC* factors weigh in favor of Defendants, the Court finds that there is no unreasonable delay here and that Defendants are entitled to judgment as a matter of law.

V.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that the Motion to Defer Summary Judgment (Dkt. 12) is DENIED; and it is

FURTHER ORDERED that the Motion for Summary Judgment (Dkt. 5) is GRANTED; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to enter Rule 58 judgment on behalf of Defendant and against Plaintiffs; and it is

FURTHER ORDERED that the Clerk of the Court is DIRECTED to place this matter among the ended causes.

IT IS SO ORDERED.

Alexandria, Virginia
July 28, 2025

/s/
Rossie D. Alston, Jr.
United States District Judge